UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SHARI E. BOWMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO.: 1:14-cv-0070-DML-SEB |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of the Social Security, | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

# Decision on Judicial Review

Plaintiff Shari E. Bowman applied in October 2010 for Disability Insurance Benefits (DIB) and Supplemental Security Income disability benefits (SSI) under Titles II and XVI, respectively, of the Social Security Act, alleging that she has been disabled since July 15, 2010. Acting for the Commissioner of the Social Security Administration following a hearing conducted by video conference on December 7, 2011, administrative law judge Angela Miranda issued a decision on September 27, 2012, finding that Ms. Bowman is not disabled. The Appeals Council denied review of the ALJ's decision on November 15, 2013, rendering the ALJ's decision for the Commissioner final. Ms. Bowman timely filed this civil action under 42 U.S.C. § 405(g) for review of the Commissioner's decision.

Ms. Bowman contends that the ALJ did not evaluate an opinion by a treating source in compliance with SSA regulations and unfairly ignored functional limitations assigned by a nurse practitioner.

## Standard for Proving Disability

To prove disability, a claimant must show that she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A) (DIB benefits); 42 U.S.C. § 1382c(a)(3)(A) (SSI benefits).[1]  Ms. Bowman is disabled if her impairments are of such severity that she is not able to perform the work she previously engaged in and, if based on her age, education, and work experience, she cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A).  The Social Security Administration ("SSA") has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 404.1520.

Step one asks if the claimant is currently engaged in substantial gainful activity; if she is, then she is not disabled.  Step two asks whether the claimant's impairments, singly or in combination, are severe; if they are not, then she is not disabled.  A severe impairment is one that "significantly limits [a claimant's]

---

[1] Two programs of disability benefits are available under the Social Security Act:  DIB under Title II for persons who have achieved insured status through employment and withheld premiums, 42 U.S.C. § 423 *et seq.*, and SSI disability benefits under Title XVI for uninsured individuals who meet income and resources criteria, 42 U.S.C. § 1381 *et seq.*  The court's citations to the Social Security Act and regulations promulgated by the Social Security Administration are those applicable to DIB benefits.  For SSI benefits, materially identical provisions appear in Title XVI and generally at 20 C.F.R. § 416.901 *et seq.*

physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The third step is an analysis of whether the claimant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. The Listing of Impairments includes medical conditions defined by criteria that the SSA has pre-determined are disabling, so that if a claimant meets all of the criteria for a listed impairment or presents medical findings equal in severity to the criteria for the most similar listed impairment, then the claimant is presumptively disabled and qualifies for benefits. *Sims v. Barnhart,* 309 F.3d 424, 428 (7th Cir. 2002).

If the claimant's impairments do not satisfy a listing, then her residual functional capacity (RFC) is determined for purposes of steps four and five. RFC is a claimant's ability to do work on a regular and continuing basis despite her impairment-related physical and mental limitations. 20 C.F.R. § 404.1545. At the fourth step, if the claimant has the RFC to perform her past relevant work, then she is not disabled. The fifth step asks whether there is work in the relevant economy that the claimant can perform, based on her vocational profile (age, work experience, and education) and her RFC; if so, then she is not disabled.

The individual claiming disability bears the burden of proof at steps one through four. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). If the claimant meets that burden, then the Commissioner has the burden at step five to show that work exists in significant numbers in the national economy that the claimant can

perform, given her age, education, work experience, and functional capacity. 20 C.F.R. § 404.1560(c)(2); *Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004).

### Standard for Review of the ALJ's Decision

Judicial review of the Commissioner's (or ALJ's) factual findings is deferential. A court must affirm if no error of law occurred and if the findings are supported by substantial evidence. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). Substantial evidence means evidence that a reasonable person would accept as adequate to support a conclusion. *Id.* The standard demands more than a scintilla of evidentiary support, but does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001).

The ALJ is required to articulate a minimal, but legitimate, justification for her decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in her decision, but she cannot ignore a line of evidence that undermines the conclusions she made, and she must trace the path of her reasoning and connect the evidence to her findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000).

### Analysis

#### I. The ALJ's Sequential Findings

Ms. Bowman was born in 1962 and was 47 years old at the alleged onset of her disability in July 2010. She was 50 years old at the time of the ALJ's decision

denying benefits. Ms. Bowman's most recent gainful work was as a data processing clerk. She also worked at a fast food restaurant and as a cashier.

At step one, the ALJ found that Ms. Bowman had not engaged in substantial gainful activity since her alleged onset date. At step two, she identified numerous severe impairments, including obesity, breathing dysfunction (manifesting itself in numerous ways at various times as reflected in the medical evidence), heart dysfunction, residual effects of an ankle fracture, and diabetes. At step three, the ALJ found that none of the severe impairments, singly or in combination, satisfied a listing. Ms. Bowman does not challenge the step one through step three findings.

The ALJ next determined Ms. Bowman's residual functional capacity. She decided that Ms. Bowman is capable of sedentary work, as defined at 20 C.F.R. § 404.1567(a), with additional postural, manipulative, and environmental limitations. With this RFC and based on the testimony of a vocational expert, the ALJ found that Ms. Bowman can perform her past relevant work as a data processor. Accordingly, she found Ms. Bowman not disabled at step four, and did not reach step five.

## II. Ms. Bowman contends the ALJ did not properly evaluate the opinions of her allergy/asthma doctor and a nurse practitioner.

Ms. Bowman's challenge to the ALJ's decision focuses on her breathing dysfunction. She does not suggest that the ALJ committed any errors in evaluating her other impairments or in accounting for their effects in the RFC. She contends that the ALJ should have credited functional capacity questionnaires completed by her treatment providers. Under their views, Ms. Bowman could not work at all

5

because she would be off task, require breaks, and be absent from work more than competitive employment permits.

Dr. Rajan I. Metha, an asthma and allergy specialist, and Sung Park, a general practice nurse practitioner, completed documents titled "Physical Medical Source Statement." (R. 963-64 (Dr. Mehta) and R. 961-62 (Nurse Park)). These documents ask the completer to estimate Ms. Bowman's functional limitations by circling answers to various questions. Ms. Bowman's argument regarding Nurse Park's statement focuses on Nurse Park's circling on the questionnaire that Ms. Bowman's impairments (which Nurse Park described as diabetes, hypertension, high blood cholesterol, allergies, asthma, and right ankle pain) likely would require her absence from work two to four days per month. The ALJ rejected that opinion by Nurse Park as unsupported by the evidence. Ms. Bowman asserts that evaluation was wrong because Dr. Mehta circled on his questionnaire that Ms. Bowman likely would be absent four days per month, thus providing evidentiary support for Nurse Park's view.

The court need only evaluate whether there is substantial evidence to support the ALJ's evaluation of Dr. Mehta's opinion. Ms. Bowman does not contest the Commissioner's argument that if there is sufficient evidence supporting the ALJ's rejection of Dr. Mehta's opinion, the ALJ adequately supported his evaluation of Nurse Park's opinion.

## III. Dr. Mehta is a treating source whose opinion demands special consideration.

### A. SSA regulations require an evaluation of the weight given medical opinions.

The weight an ALJ gives to medical opinions is guided by factors described in 20 C.F.R. § 404.1527(c). An opinion by a treating physician about the nature and severity of a claimant's impairments is entitled to "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence" in the record. *Id.* § 404.1527(c)(2). The rationale for according controlling weight in these circumstances is that a treating source may provide a longitudinal and detailed picture of a claimant's impairments and may bring a unique perspective to the medical evidence that may not be shown by objective medical findings alone or reports from individual examinations. *Id.* Controlling weight is never assigned, however, to a treating physician's opinion whether a listing is met or about the claimant's residual functional capacity because "the final responsibility for deciding these issues is reserved to the Commissioner." *Id.* § 404.1527(d)(2).

If the ALJ reasonably determines the treating physician's opinion does not deserve controlling weight, she must determine what weight it deserves. The regulation provides a list of factors to guide that evaluation. The same factors guide the weighing of other medical opinions in the record, including those of state agency physicians and other non-treating medical sources. The factors are the degree to which the opinion (a) is supported by relevant evidence and explanations; (b)

7

considered all pertinent evidence; (c) is consistent with the record as a whole; and (d) is supported or contradicted by other factors, such as the physician's understanding of SSA disability requirements. *Id.* § 404.1527(c)(3), (4), (6). The physician's field of specialty and the nature and extent of her treatment relationship with the claimant are also considered. *Id.* § 404.1527(c)(1), (2), and (5).

### B. The ALJ's evaluation of Dr. Mehta's opinion misstates the record and lacks appropriate discussion of the required factors.

The ALJ evaluated Dr. Mehta's opinion regarding Ms. Bowman's breathing impairments and their effect on her functioning as follows:

> Dr. Mehta offered a medical source statement that is undated and which provides extreme limitations and absences that are not otherwise supported by this doctor's clinical exams or the clinical exams/objective findings of other treating or examining sources, as discussed throughout this decision. Furthermore, these limitations are not supported by any objective finding as could have been obtained from a valid functional capacity evaluation under the direction of a licensed physical therapist.

(R. 29-30).

There are four problems with this evaluation, the combined effect of which convinces the court that the Commissioner's decision should be reversed and remanded.

First, the impairments Ms. Bowman asserts prevent her from working are breathing difficulties stemming from asthma, allergies, and lung dysfunction. It is therefore not rational to dismiss the worth of Dr. Mehta's opinion because it is not corroborated by findings from a licensed physical therapist.

8

Second, it is not clear the ALJ was aware of Dr. Mehta's specialty or the length and consistency of his treatment relationship with Ms. Bowman. The ALJ's decision mentions only two instances of treatment by Dr. Mehta, noting that he performed pulmonary function testing in November 2010 and again in April 2011. The ALJ never acknowledged that Dr. Mehta specializes in treating allergies and asthma and first began treating Ms. Bowman in September 2008. Nor did the ALJ address Dr. Mehta's statement that he has seen Ms. Bowman approximately every three to six months over the course of his treating relationship. A proper evaluation of the weight to give the statement of a medical source requires some awareness of the nature and extent of the treatment relationship and the doctor's area of expertise. In this case, the absence of any indication in the ALJ's decision that these factors were taken into account is troubling, especially because Ms. Bowman's attorney specifically brought out in his questioning at the hearing the length of the treatment relationship and Dr. Mehta's expertise. (*See* R. 69).

Third, Dr. Mehta's opinion is not, as the ALJ found, undated. It is dated November 1, 2011, which is significant given the ALJ's evaluation of the medical evidence in the record. The ALJ determined that although Ms. Bowman had experienced significant breathing dysfunction, she was at "the peak of her illness" in November 2010, and then had no "active disease." (R. 29 and 30). If Dr. Mehta's opinion were undated, it would be possible to discount it as possibly representative of a time period when Ms. Bowman was, in the ALJ's view, at the "peak" of her illness before it largely resolved. Because Dr. Mehta provided his opinion in

November 2011, it cannot so easily be discarded.  Further, given its November 2011 date, and Dr. Mehta's opinion that Ms. Bowman has restrictive lung disease and apparently is still suffering from breathing difficulties, including shortness of breath, the opinion contrasts with the ALJ's finding that Ms. Bowman's breathing problems "peaked" a year earlier and she no longer was actively diseased.

Fourth, the pulmonary function testing the ALJ acknowledged was performed by Dr. Mehta revealed that Ms. Bowman had similar FVC and FEV values[2] both during the time the ALJ found her disease had peaked and after the time the ALJ found her disease had essentially resolved.  (*See* Plaintiff's reply brief, Dkt. 29, at p. 5).  This factor also detracts from the ALJ's finding that Dr. Mehta's opinion is inconsistent with objective findings in the record.

The court does not suggest the ALJ was required to accept Dr. Mehta's opinion.  But some of the reasons she gave for rejecting Dr. Mehta's opinion are not supported by the record, and she failed to acknowledge Dr. Mehta's lengthy treatment relationship with Ms. Bowman and discuss the relevance of his expertise. The court cannot be certain the ALJ would reach the same conclusion about Dr. Mehta's opinion had she known of his expertise and his lengthy treatment relationship, and had she taken a closer look at objective support for Dr. Mehta's opinion (including comparing the history of pulmonary function testing) with the knowledge that his opinion was provided in November 2011.  In summary, the court

---

[2]    FVC (or forced vital capacity) and FEV (forced expiratory volume) are testing values used to diagnose the severity of pulmonary dysfunction.

finds the ALJ's articulation of her reasons for wholly rejecting the opinion of Ms. Bowman's treating physician is not supported by substantial evidence.

## **Conclusion**

For the foregoing reasons, the Commissioner's decision that Ms. Bowman is not disabled is REVERSED AND REMANDED under sentence four of 42 U.S.C. § 405(g).

So ORDERED.

Dated: March 25, 2015

_Debra McVicker Lynch_
Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record by email through the court's ECF system